**Verlina COBB, on behalf of herself and all others similarly situated, Plaintiff,**

**v.**

**MONARCH FINANCE CORP.; Cole Taylor Bank; Sir Finance Corp.; Bank One, Chicago, N.A., Successor by Merger to Bank One, Evanston, N.A.; Brother Loan & Finance Corp.; Lakeside Bank; and John Does 1–10, Defendants.**

**No. 95 C 1007.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 29, 1995.

---

1166

Cathleen C. Cohen, Daniel A. Edelman, James O. Latturner, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Danielle Renee Gomez, Rick D. Young, Edelman & Combs, Chicago, IL, for plaintiff.

Michael B. Hyman, Norman B. Newman, William Henry London, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, IL, for Monarch Finance Corp.

David J. Bradford, Darryl Mark Bradford, Paul T. Whitcombe, Jenner & Block, Chicago, IL, for Cole Taylor Bank.

Amy A. Hijjawi, Katten, Muchin & Zavis, Chicago, IL, Francis Xavier Grossi, Jr., Bates, Meckler, Bulger & Tilson, Chicago, IL, for Sir Finance Corp.

Richard F. Zehnle, Diane Marie Kehl, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Bank One Chicago, N.A.

Bernard Wiczer, Fred L. Berkovits, Elliot Scott Wiczer, Wiczer & Associates, Chtd., Northbrook, IL, for Brother Loan & Finance Corp.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Verlina Cobb brings this proposed class action against three finance companies (the "Lender Defendants"), three banks (the "Bank Defendants"), and unknown corporate officers of the finance companies and banks (the "John Doe Defendants"). Cobb alleges that, in the making and handling of loans that she borrowed from the Lender Defendants, the defendants violated various federal lending and banking laws; in addition, Cobb's complaint adds several state law claims. Presently before this court are: (1) the plaintiff's motion for class certification; (2) the Bank Defendants' motion to dismiss; (3) the Lender Defendants' motion to dismiss; and (4) the plaintiff's motion to "strike" a motion for summary judgment filed by one of the Bank Defendants. For the reasons set forth below, we grant the motion for class certification, grant in part and deny in part the Bank Defendants' motion to dismiss, grant in part and deny in part the Lender Defendants' motion to dismiss, and deny the plaintiff's motion to "strike" the summary judgment motion.

## I. Background

From November 1993 to November 1994, Cobb procured a total of ten separate loans from three finance companies (collectively, the Lender Defendants): (1) four loans from Sir Finance Corporation, each with a principal of $690, an annual percentage rate of 101%, and payable in 19 bi-weekly payments; (2) five loans from Brother Loan & Finance Company, each with a principal of $700, an annual percentage rate of 96.43%, and payable in 14 bi-weekly payments; and (3) one loan from Monarch Finance Corporation, with a principal of $500, an annual percentage rate of 57.22%, and payable in 15 bi-weekly payments.

Cobb alleges that the loan agreements she entered into with the Lender Defendants, although using different language, all created a similar payment mechanism. The bi-weekly loan repayment schedules corresponded to Cobb's employee pay schedule; at the time, she worked for the United States Department of Labor. Cobb maintains that each loan agreement purported to authorize the creation of a bank account on Cobb's behalf, to which an allotted portion of Cobb's paycheck was electronically and directly deposited. The allotment was then immediately transferred from Cobb's account to the finance company's account, held at the same bank. Each finance company designated a different bank at which the account would be created. The three banks (collectively, the Bank Defendants) were: (1) Bank One–Evanston,[1] designated by Sir Finance; (2) Lakeside Bank, designated by Brother Loan; and (3) Cole Taylor Bank, designated by Monarch Finance. Cobb also alleges that

---

1. One of the named defendants, Bank One–Chicago, is the successor corporation to Bank One–Evanston.

the agreements purported to waive her rights to receive "account statements or transaction reports" regarding the accounts.

Cobb filed for Chapter 7 bankruptcy on February 3, 1995. At the time, she had not repaid in full her final loans from Sir Finance and Brother Loan, and had not repaid in full her one loan from Monarch Finance. After filing for bankruptcy, the plaintiff filed three separate actions, which have been reassigned and consolidated on relatedness grounds, and named as defendants the Bank Defendants, the Lender Defendants, and unknown corporate officers (collectively, the "John Doe Defendants") of the banks and finance companies.

The plaintiff's consolidated complaint asserts seven counts: (1) the Lender Defendants and the Bank Defendants violated disclosure requirements and other provisions of the Electronic Fund Transfers Act (EFTA), 15 U.S.C. §§ 1693–1693r, and its implementing regulations, 12 C.F.R. part 205; (2) the Lender Defendants failed to inform Cobb that they had obtained a security interest in Cobb's bank accounts as required by 12 C.F.R. § 226.18(m), promulgated pursuant to the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667e; (3) the Bank Defendants failed to meet the disclosure requirements of 12 C.F.R. §§ 230.4–230.6, promulgated pursuant to the Truth in Savings Act (TISA), 12 U.S.C. §§ 4301–4313; (4) the Bank Defendants, Lender Defendants, and John Doe Defendants obtained a wage assignment from Cobb without providing her with proper notice and opportunity to object, a violation of the Illinois Wage Assignment Act (IWAA), 740 ILCS 170/1–170/11; (5) the Bank Defendants and Lender Defendants entered into loan agreements with the plaintiff that were unconscionable under Illinois law; (6) the Bank Defendants, Lender Defendants, and John Doe Defendants violated a fiduciary duty owed to the plaintiff under 31 C.F.R. § 209.8; and (7) the Bank Defendants, Lender Defendants, and John Doe Defendants committed a deceptive practice under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1–505/12.

The plaintiff moves to certify three classes, labelled as the Sir Finance/Bank One class, the Brother Loan/Lakeside class, and the Monarch/Cole Taylor class. In general, the proposed members of the respective classes consist of all persons who entered into finance agreements with the named finance companies and into account authorizations with the named banks using the same forms that Cobb signed. More specifically, the class members for Counts I–III would be limited to those persons who signed the documents within one year of this suit's filing date; the class members for Counts IV and VI would be limited to those persons who signed the documents within five years of this suit's filing date. Furthermore, the class members for Counts V and VII would be limited to those persons whose loans called for greater than a 40% annual percentage rate, and would be further limited to those persons who signed within five years for Count V and three years for Count VII. The defendants oppose class certification, arguing that the claims of the named plaintiff are atypical of the class's claims, and that the named plaintiff would serve as an inadequate class representative. We discuss the class certification issue first, then turn to the defendants' motions addressing the merits. See *Hudson v. Chicago Teachers Union, Local No. 1*, 922 F.2d 1306, 1316–17 (7th Cir.), cert. denied, 501 U.S. 1230, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

## II. Motion for Class Certification

### A. Requirements for Class Certification

■ Federal Rule of Civil Procedure 23(a) specifies four preliminary requirements that any proposed class must meet:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). If the "numerosity, commonality, typicality, and adequacy" require-

ments are satisfied, *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993) (citations omitted), then we must also decide whether the class qualifies under one of the three subsections of Rule 23(b). In the instant case, the plaintiff seeks certification under Rule 23(b)(3), which authorizes class actions where the "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). The plaintiff bears the burden of showing that the proposed class meets the requirements for certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993).

■ In evaluating a motion for class certification, the allegations made in support of certification are taken as true, *Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill. 1993), and as a general matter, we do not examine the merits of the case, *Retired Chicago Police Ass'n*, 7 F.3d at 598. However, the " 'boundary between a class determination and the merits may not always be easily discernible,' " *id.* at 599 (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982)), because determining the propriety of class certification generally depends on factors " 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' " *id.* at 598 (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (citation omitted)). Finally, claims arising out of form contracts are particularly appropriate for class action treatment. *Haroco, Inc. v. American Nat'l Bank and Trust Co.*, 121 F.R.D. 664, 669 (N.D.Ill.1988).

### B. Uncontested Requirements

■ In light of these principles, we find that class certification is appropriate in the instant case. At this early stage of the litigation,[2] the defendants recognize that the nu-

merosity and commonality prerequisites are satisfied here. Defs.' Class Cert.Resp. at 10 n. 7. Apparently, hundreds of transactions meet the classes' definition, *see* Pl.'s Mot. for Class Cert. ¶ 8(a)–(c); Defs.' Class Cert. Resp., Exs. B, C, and within each of the three proposed classes, the same standard form was used. In addition, the defendants—for now—do not challenge that a class action is superior to individual actions and that questions of law and fact common to the class predominate over individual questions. Thus, Rule 23(b)(3) authorizes certification.

### C. Typicality

■ Accordingly, at this time the defendants argue against certification on only two grounds, specifically, that the named plaintiff fails to meet the typicality and adequacy prerequisites. In evaluating the typicality of a named plaintiff's claims, we

> focus on whether the named representative['s] claims have the same essential characteristics as the claims of the class at large. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

*De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions* § 1115(b) (1977)); *Retired Chicago Police Ass'n*, 7 F.3d at 597. Typicality might not be met, however, where the named plaintiff is subject to a "unique defense," *Hardy v. City Optical, Inc.*, 39 F.3d 765, 770 (7th Cir.1994), that will "distract[ ]" the named plaintiff and cause the representation of the class to "suffer," *J.H. Cohn & Co. v. American Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir.1980). For example, the named plaintiff's lack of injury might render him or her atypical. *Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 407 (N.D.Ill.1987).

■ The defendants argue that there exist two defenses unique to Cobb. First, the defendants assert that Cobb has suffered no

---

**2.** We note that a district court "remains free to modify" a class certification order "in light of subsequent developments in the litigation."

*General Tel. Co.*, 457 U.S. at 160, 102 S.Ct. at 2372.

injury because, at the time Cobb filed for bankruptcy, she had retained more in principal on her final loans than she had repaid.[3] The defendants argue that Cobb, who has filed for bankruptcy, thus actually profited from the transactions because the loans will be discharged.

However, Cobb's ostensible net gains do not necessarily render her free from injury under the various claims that she brings. First, Cobb did repay the first three loans from Sir Finance, the first four loans from Brother Loan, and part of the loan from Monarch. Cobb may recover actual damages resulting from the federal statutory violations, EFTA, 15 U.S.C. § 1693m(a)(1); TILA, 15 U.S.C. § 1640(a)(1); TISA, 12 U.S.C. § 4310(a)(1), and in this case, actual damages could encompass the amount of interest that the defendants collected—illegally, according to Cobb—from the named plaintiff.[4] While it is true that the final loan balances might be discharged in bankruptcy, that does not change the alleged injury suffered by Cobb, namely, the interest payments she made on the allegedly unlawful loans. Finally, apart from actual damages, Cobb also seeks to recover statutory damages, a claim typical to the class. EFTA, 15 U.S.C. § 1693m(a)(2)(B); TILA, 15 U.S.C. § 1640(a)(2)(B); TISA, 12 U.S.C. § 4310(a)(2)(B). Accordingly, we conclude that lack of injury is not a defense so unique to Cobb that she will be distracted from representing the class claims.

■ Next, the defendants argue that the named plaintiff is subject to another unique defense, specifically, that Cobb did not have any "accounts" within the meaning of the relevant federal statutes because (a) the number of paycheck allotments she made absolutely precludes her from statutory protection, and (b) she testified in her bankruptcy proceeding that she was unaware of the

bank accounts created in her name. Although these contentions tread precariously close to arguments on the merits, we can readily address them for purposes of class certification. First, the defendants argue, two is the maximum number of paycheck allotments to a savings account under a Department of Treasury regulation, 31 C.F.R. § 209.3(b)(3), and Cobb had three paycheck allotments concurrently. This purportedly unique defense will not distract Cobb from class representation. It is the head of the employing agency, not the employee, that is directed to follow the limit on the number of paycheck allotments, § 209.3(b), and the number of allotments is in no way mentioned in the definition of the accounts or transactions protected by the relevant statutes or regulations, EFTA, 15 U.S.C. § 1693a(2), 12 C.F.R. § 205.3(b); TILA 15 U.S.C. § 1602(h), 12 C.F.R. § 226.2(a)(10)–(12); TISA, 12 U.S.C. § 4313(1), 12 C.F.R. § 230.2(a), (h).

■ Second, the defendants maintain, the named plaintiff has already testified in her bankruptcy proceeding that she was unaware of the existence of "savings" accounts, and thus cannot claim that she was opening accounts protected by the applicable statutes. This defense also will not distract the named plaintiff from pursuing the class's claims. Cobb's testimony in the bankruptcy creditor's hearing reflects that she avows ignorance of *any* bank accounts created in *her* name pursuant to the loan agreements, Tr. of Creditor's Hearing at 6; this ignorance is entirely consistent with the class claims alleging that the defendants failed to make required disclosures. Moreover, just as the applicable federal statutes do not mention the number of permissible allotments in the definition of protected "accounts," the statutes do not limit their application to "sav-

---

3. Specifically, Cobb had not repaid: approximately $600 of her final $690 Sir Finance loan, Defs.' Class Cert.Resp., Ex. A, Schedule F; $692.05 on her final $700 loan from Brother Loan, *id.*, Ex. C, ¶ 22; and $514.50 on the loan from Monarch Finance, *id.*, Ex. B. Apparently, the plaintiff used subsequent loans from Sir Finance and Brother Loan to prepay the outstanding balances on prior loans. *See* Compl., Exs. O, P, R, U, X; Defs.' Class Cert.Resp. at 6 n. 4.

4. We emphasize that, at the class certification stage, we refrain from deciding on the merits whether any actual damages are due in this case or the proper measure of any actual damages; for purposes of class certification, it is sufficient to hold that the named plaintiff can in fact allege injury.

ings" accounts, EFTA, 15 U.S.C. § 1693a(2), 12 C.F.R. § 205.3(b); TILA 15 U.S.C. § 1602(h), 12 C.F.R. § 226.2(a)(10)–(12); TISA, 12 U.S.C. § 4313(1), 12 C.F.R. § 230.2(a), (h), and indeed the TILA governs consumer credit transactions, not bank accounts, 15 U.S.C. § 1602(h). We conclude at this time that the named plaintiff satisfies the typicality prerequisite and is not subject to unique defenses.[5]

### D. Adequacy

■ The other prerequisite challenged by the defendants is the adequacy of the named plaintiff, a requirement comprised of two parts: " '[1] the adequacy of the named plaintiff's counsel, and [2] the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n,* 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986) (*en banc* )). The defendants raise no dispute regarding the adequacy of Cobb's attorneys, and we have in a prior case deemed Cobb's attorneys "experienced class action attorneys," *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 676 (N.D.Ill.1989). Because there apparently is no reason to question otherwise, we find plaintiff's counsel to be adequate.

The defendants do challenge, however, the adequacy of the named plaintiff's representation of other interests of the class members. First, the defendants argue that Cobb does not have a sufficient financial stake in the litigation. However, given a class size on the order of a thousand individuals, each class member stands to recover hundreds of dollars in statutory damages, in addition to actual damages. Indeed, the defendants recognize that recovery against the Bank Defendants could provide financial incentive to pursue the class action; the defendants instead argue that Cobb failed to exempt the causes of action against the Bank Defen-

dants from her bankruptcy estate. Defs.' Class Cert.Resp. at 12. Cobb has filed, however, a Third Amended Schedule of Exempted Property that includes the causes of action, Pl.'s Class Cert.Reply, Appendix, and thus may recover and personally retain damages in this action.[6]

■ Finally, the defendants argue that Cobb has a conflict of interest with the class, presumably because her debts will be discharged in bankruptcy and she thus will have "no interest in injunctive relief or in reducing the amount of the loan obligation as a form of relief." Defs.' Class Cert.Resp. at 13. The defendants pose a hypothetical settlement offer in which the defendants forgive the last loan payment of each class member, a value of approximately $40 for each member given a class size of one thousand. *Id.* According to the defendants, Cobb could not adequately evaluate this offer on behalf of those class members who have not finished paying their loans. This is not, however, the sort of " 'antagonistic or conflicting claims' " of class members that will result in unfair and inadequate representation, *Retired Chicago Police Ass'n,* 7 F.3d at 598 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993)). Although it is always possible to construct a creative settlement that will pit some class members against others, in the instant case success for those who have paid their loans in full will not impair the success of those who have not yet fully repaid their loans. Hence, the claims of the class members do not conflict. Lastly, some class members presumably have paid their loans in full, and thus Cobb's interests are exactly aligned with those members. Accordingly, we find that Cobb has met the adequacy prerequisite, and we grant the plaintiff's motion to certify the three proposed classes. We now discuss the motions addressing the merits of the case.

---

**5.** Our finding that typicality is met also applies to the named plaintiff's state law claims; no unique defenses will distract Cobb from pursuing these claims on the classes' behalf.

**6.** The plaintiff is entitled to exempt up to $2000 in personal property from the bankruptcy estate,

11 U.S.C. § 522(b)(2)(A), 735 ILCS 5/12–1001(b), and her Third Amended Schedule exempts only $925 in personal property other than this lawsuit against the defendants. Accordingly, Cobb is left with a maximum potential recovery of $1025.

## II. Standard for Reviewing Motions to Dismiss

▇▇▇ A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995); *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take as true the well-pleaded factual allegations of the complaint and view them, as well as reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. 230,* 991 F.2d 1316, 1324 (7th Cir.1993) (citing *Ellsworth,* 774 F.2d at 184).

## III. Bank Defendants' Motion to Dismiss[7]

### A. Electronic Fund Transfers Act

▇▇▇ In debating Count I, the parties primarily dispute whether the plaintiff fails to allege that she owned an "account" that implicates the EFTA. Because the EFTA's requirements are triggered by "electronic fund transfer[s]" that "debit or credit an *account,*" 15 U.S.C. § 1693a(6) (emphasis added); 12 C.F.R. § 205.3(g), the meaning of "account" determines in this case whether Cobb states a claim under the EFTA. Pursuant to its rulemaking authority under the EFTA, § 1693b, the Federal Reserve Board promulgated a set of regulations codified at 12 C.F.R. part 205, popularly known as "Regulation E," including a specific section that defines account as

a demand deposit (checking), savings, or other consumer asset account ... held either directly or indirectly by a financial institution and established primarily for personal, family, or household purposes.

12 C.F.R. § 205.3(b).[8] In the instant case, Cobb maintains that each bank account received direct deposits from Cobb's paychecks; the respective bank then transferred the funds to an account of the appropriate Lender Defendant as a loan payment. According to Cobb, the bank accounts were "savings account[s]," Compl., Ex. L (Lakeside Bank allotment agreement), or at least were "account[s]," Compl., Ex. C (Cole Taylor Bank allotment agreement), established primarily for personal, family, or household purposes, Pl.'s Resp. to Bank Defs. at 6–7.

▇▇▇ We hold that the plaintiff states a claim under the EFTA. Section 1693a(2) and regulation § 205.3(b) simply define "accounts" as those bank accounts "established primarily for personal, family, or household purposes." In interpreting this latter phrase, we turn to similar language in the TILA, which defines "consumer credit transaction" as those in which "the money, property, or services which are the subject of the transaction are primarily for personal, family, [or] household ... purposes," 15 U.S.C. § 1602(h). Under the TILA, like the EFTA, the term "personal, family, or household purposes" distinguishes "consumer" transactions from "business" transactions, *see American Express Co. v. Koerner,* 452 U.S. 233, 242–43, 101 S.Ct. 2281, 2286–87, 68 L.Ed.2d 803 (1981), or in other words, "consumer" transactions from "commercial" transactions, *Tower v. Moss,* 625 F.2d 1161, 1166 (5th Cir.1980) (deeming a mortgage for a home improvement loan as a consumer transaction). In the TILA context, we "examine the transaction as a whole" and in light of "the entire surrounding factual circumstances," *id.* at 1166 & n. 4, and if the transaction "involves a profit motive," that indicates a business or commercial transaction, *see In re Booth,* 858 F.2d 1051, 1054–55 (5th Cir.1988).

▇▇▇ Employing an analogous standard to the EFTA claim, and taking the allegations

---

7. Although the parties label the motion to dismiss that addresses the federal claims as the motion of the "Bank Defendants," and the other motion, which argues the TILA state claims, as the "Lender Defendants," each group adopted the arguments of the other to the extent that the claims were asserted against them.

8. Regulation E's definition draws from the statutory definition of account:
 a demand deposit, savings deposit, or other asset account ..., as described in regulations of the Board [of Governors of the Federal Reserve System], established primarily for personal, family, or household purposes....
 15 U.S.C. § 1693a(2).

as true and in the light most favorable to the plaintiff, we determine that the alleged bank accounts were "established primarily for personal, family, or household purposes." The accounts received direct deposits from Cobb's paychecks, and then the funds were transferred to the respective finance company's account.[9] Using the accounts to repay the loans—which were made to Cobb in her personal capacity and for no apparent business purpose—represented a personal purpose for the bank accounts. Thus, the plaintiff's accounts, as alleged, meet the definition of "accounts" under the EFTA.[10] Accordingly, the plaintiff adequately alleges violations of specific provisions of the EFTA and Regulation E.[11]

### B. Truth in Savings Act

■■■ Similarly to their argument on the EFTA claims, the Bank Defendants contend that the plaintiff fails to allege that she

owned bank accounts that fall within the TISA's definition of account. The Federal Reserve Board regulations promulgated pursuant to the TISA are popularly known as "Regulation DD" and codified at 12 C.F.R. part 230, and provide that "[a]ccount means a deposit account at a depository institution that is held by or offered to a consumer." § 230.2(a). In turn, the definition of "consumer" is "a natural person who holds an account primarily for personal, family, or household purposes, or to whom such an account is offered." § 230.2(h).[12] Regulation DD's definition of "account," in conjunction with the definition of "consumer," parallels the EFTA's and Regulation E's definition of "account." Accordingly, we hold that Cobb's alleged accounts fall within the ambit of the TISA.[13]

■■■ The Bank Defendants argue, however, that even if the alleged accounts trigger

9. In arguing against the applicability of the EFTA, the defendants contend that the EFTA would provide for *over* disclosure because of the limited purpose of the accounts. The defendants point out that the plaintiff's pay statements already indicate the date, amount, and recipient of the fund transfer. However, we cannot rewrite the statutory and regulatory definitions to exclude the alleged accounts, which fall within the definitional language. Moreover, even if the plaintiff's pay statements did express which account number had received a fund transfer, EFTA disclosures would still serve a purpose because the pay statement would *not* reflect when and whether the loan payment had been successfully transferred to the Lender Defendants' accounts.

10. In discussing the EFTA claims, the parties also dispute whether Cobb's allotments constituted allotments to "savings account[s]" under 31 C.F.R. § 209.2(f), or whether Cobb's allotments constituted "discretionary allotments" under 31 C.F.R. § 210.2. We discuss these disputes in deciding whether the plaintiff states a claim under 31 C.F.R. § 209.8 for breach of fiduciary duty, *see infra* Part III.C, but for purposes of deciding the EFTA claims, we need only hold that there exists no persuasive reason to think that the applicability of *the EFTA* turns on § 209.2(f)'s definition of savings account or on § 210.2's definition of discretionary allotment. Both regulatory parts disavow any intent to "supersede" or "circumvent[] the requirements of particular statutes." §§ 209.1(b), 210.16. Because we find that the alleged bank accounts otherwise fall within the EFTA's statutory definition of "account," the purported characterization of Cobb's allotments as either savings or discre-

tionary does not somehow alter the nature of the accounts.

11. We point out that Count I generally alleges that the Bank *and* Lender Defendants are responsible for each of the specific statutory and regulatory violations: Compl. ¶ 97. However, it appears that some of the specified statutory and regulatory sections may be applicable only to the Bank *or* Lender Defendants. *E.g.*, 12 C.F.R. § 205.10(a) (directing the "financial institution" to provide notice). Because the defendants, for now, move to dismiss only on more comprehensive grounds, we note that our decision today does not decide these more narrow issues.

12. Regulation DD's definitions draw from the TISA's statutory definition of account:

> any account intended for use by and generally used by consumers primarily for personal, family, or household purposes that is offered by a depository institution into which a consumer deposits funds, including demand accounts....

12 U.S.C. § 4313(1).

13. The defendants argue that Cobb never subjectively intended to open the bank accounts, relying on her testimony during the creditor's hearing held as part of her bankruptcy filing, *see* 11 U.S.C. § 341. The bankruptcy trustee asked Cobb to describe the lawsuit, and the plaintiff explained, with some difficulty, that she had not been aware that the defendants opened bank accounts in her name. Bank Defs.' Mot., Ex. J, at 5–6. However, we take caution in considering this testimony in what is otherwise a motion to dismiss because the testimony is not incorporat-

the TISA's disclosure requirements, the plaintiff waived her statutory right to receive the disclosures. The plaintiff responds that the TISA's disclosure requirements are not waivable, arguing that the TISA contains no express authorization for waiver. However, in addressing a wide array of constitutional and statutory provisions, the Supreme Court has held that waiver is presumptively available absent an express bar of waiver. *United States v. Mezzanatto*, —— U.S. ——, ——, 115 S.Ct. 797, 801, 130 L.Ed.2d 697 (1995). "[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties." *Id.* Thus, we reject the plaintiffs' contention that the TISA's requirements are not waivable.

■ Accordingly, we grant the Bank Defendants' motion to dismiss the TISA count. Based on the allegations in the complaint, and the exhibits incorporated into the complaint,[14] the plaintiff unequivocally "waive[d] any rights to receive any and all account statements or transaction reports concerning this account that are required under any law, regulation or rule to be sent to me."[15] Compl., Exs. C, L; Compl. ¶¶ 22(d), 29(b), 36(d). Thus, we dismiss the TISA count.

### C. Breach of Fiduciary Duty

■ Next, the defendants move to dismiss Count VI, which alleges that the defendants owed and breached a fiduciary duty to the plaintiff under 31 C.F.R. part 209. The Federal Reserve Board promulgated part

209 to govern, in pertinent part, recurring deductions from federal employee paychecks to employee savings accounts. § 209.3. Employees "may authorize an allotment of pay for a savings account," § 209.3(a), and a financial institution that receives such an allotment "does so in each case as the agent of the employee ... who has designated the financial institution to receive the check and credit his account," § 209.8. The plaintiff relies on the agency relationship imposed by § 209.8 as the source of the Bank Defendants' fiduciary duty to her.

However, § 209.2(f) provides that

[s]avings account means an account (single or joint) for the purchase of shares (other than shares of stock) or *for the deposit of savings* in any financial institution, the title of which account include[s] the name of the authorizing employee.

(emphasis added). Neither party urges that the alleged accounts are for the "purchase of shares," and we additionally conclude that the alleged accounts are not accounts for the "deposit of savings." According to the complaint, the accounts received direct deposits from Cobb's paychecks, and the banks then transferred the funds to another account as a loan payment. The alleged accounts thus received deposits of funds to repay personal loans, not "deposits of savings"; the deposited funds were not to be saved in any way. Because the complaint fails to adequately allege that the accounts were "savings account[s]" covered by part 209, the Bank Defendants did not owe the plaintiff a fiduciary duty.[16] Accordingly, we dismiss Count VI

---

ed into the plaintiff's complaint; the dangers of considering the testimony at this stage are highlighted by: the plaintiff's obvious difficulty in articulating her concerns at the creditor's hearing, Bank Defs.' Mot., Ex. J. at 7; the plaintiff was represented at the hearing by an attorney of counsel to her bankruptcy attorney's firm, who had no knowledge of the class action, *id.* at 11; and although the hearing was for creditors, 11 U.S.C. § 341(a), at least one of the *Bank* Defendants sent an attorney to the hearing, Defs.' Resp. to Class Cert., Ex. E, at 14. Finally, Regulation DD does not refer to subjective intent in defining "account" and "consumer"; rather, consistent with the case law interpreting the TILA, *see supra* Part III.A, the nature of the account is the relevant inquiry.

**14.** For purposes of evaluating a motion to dismiss, we may consider exhibits incorporated into a complaint. Fed.R.Civ.P. 10(c); *Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004, 1005 (7th Cir.1990).

**15.** The EFTA expressly prohibits waiver of its provisions, 15 U.S.C. § 1693l, and thus the defendants do not argue that the waiver provisions signed by the plaintiff are fatal to the EFTA claims.

**16.** In light of our holding, there is no reason to address whether § 209.8 actually imposes a fiduciary duty on financial institutions merely because the regulation imposes an agency relationship.

for failure to state a claim.[17]

### D. State Law Claims

Finally, the Bank Defendants move to dismiss the state law claims, relying for the most part on the Lender Defendants' arguments. As we explain below in deciding the Lender Defendants' motion to dismiss, *see infra* at Part IV.B, we dismiss Count IV, which alleges that the Bank and Lender Defendants violated the Illinois Wage Assignment Act, 740 ILCS 170/1–170/11.

■ In addition, we dismiss Count V, the unconscionable contract claim, as to the Bank Defendants. Aside from incorporating other allegations, the plaintiff's sole allegation in support of the unconscionable contract claim declares:

> The combined effect of the extraordinarily high interest rates charged, the systematic violations of consumer protection laws and regulations by defendants, and in the case of Monarch the misrepresentation that borrowers were obtaining "signature loans" made all of the loans at issue unconscionable.

Compl. ¶ 106. "A contract will be treated as unconscionable when it is so one-sided that only one under delusion would make it and only one unfair and dishonest would accept it." *In re Estate of Croake,* 218 Ill.App.3d 124, 161 Ill.Dec. 209, 211, 578 N.E.2d 567, 569, *appeal denied,* 142 Ill.2d 654, 164 Ill. Dec. 916, 584 N.E.2d 128 (1991). The plaintiff's "combined effect" theory, however, fails to implicate the Bank Defendants as parties to the loan agreements. Indeed, the complaint does not allege that the Bank Defendants played any part in setting the loans'

interest rates or in procuring prospective debtors.

Accordingly, we consider only those allegations that relate to the Bank Defendants' agreement to create accounts in the plaintiff's name. Although the plaintiff adequately alleges that the Bank Defendants violated provisions of the EFTA, this falls short of the "systematic violations of consumer protection laws," Compl. ¶ 106, that the plaintiff alleges in support of the unconscionability claim; in short, the EFTA violations are the only allegations supporting the unconscionability claim against the Bank Defendants. Without more, the plaintiff has failed to allege an unconscionable contractual relationship between the Bank Defendants and the plaintiff. We dismiss Count V as to the Bank Defendants.

Lastly, as we explain below, *see infra* Part IV.D, we deny the defendants' motion to dismiss Count VII, the Illinois Consumer Fraud Act claim, 815 ILCS 505/1–505/12. The plaintiff adequately alleges a statutory fraud claim against both the Bank and Lender Defendants.

## IV. Lender Defendants' Motion to Dismiss

### A. Truth in Lending Act

■ The Lender Defendants move to dismiss Count II, which alleges that each of the Lender Defendants "fail[ed]" to disclose that it was obtaining a security interest in the savings accounts," Compl. ¶ 28, in violation of 12 C.F.R. § 226.18(m). The Federal Reserve Board promulgated § 226.18 as part of "Regulation Z," which implements the TILA. Section 226.18(m) provides that creditors governed by the TILA shall disclose "[t]he fact that the creditor has or will acquire a

---

**17.** We reject the defendants' argument that if we conclude Cobb's allotments do not fall under part 209, then the allotments are necessarily "discretionary allotments" covered by part 210; the defendants contend that discretionary allotments do not implicate the EFTA or the TISA. However, while discretionary allotments are made from the employee's paychecks to a "recipient's" account, §§ 210.2, 210.18(b), the allegations in the instant case express that the funds were credited to accounts in the plaintiff's name, not to accounts of the Lender Defendants. As alleged, the allotments are covered by neither part 209 nor 210. It may be true that parts 209,

210, and the general provisions for salary allotments in 5 C.F.R. § 550.301–550.381 *should* be the exclusive means by which the employing agency makes salary allotments, but as a practical matter it is entirely possible that the employing agency might make salary allotments outside the regulatorily-prescribed means. In the instant case, on the direct deposit forms submitted to the employing agency, the Bank Defendants apparently noted that the allotments were for "savings," Compl., Exs. E, L, and it is understandable that the employing agency would construe the allotments as such.

security interest in the property purchased as part of the transaction, or in other property identified by item or type." Under Regulation Z, a security interest is "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." § 226.2(a)(25).

The plaintiff argues that the "transaction documents" created a security interest in the plaintiff's accounts. Pl.'s Resp. to Lender Defs. at 5. Specifically, the plaintiff contends that the loan agreements prohibited her from "cancel[ing] my allotment until loan is paid in full," *e.g.*, Compl., Exs. G, M, and that the allotment agreements prohibited her from withdrawing funds from the accounts without the Lender Defendants' permission, *e.g.*, Compl. ¶¶ 22(e), 29(c). However, the Lender Defendants' alleged interest in the plaintiff's accounts did not "secure[ ] performance" of the loan obligations. § 226.2(a)(25). The complaint simply alleges that the plaintiff's accounts received funds from her paycheck for transfer to the Lender Defendants' accounts. That is, the accounts served to facilitate repayment of the loans, not to secure repayment upon default. We dismiss Count II because the complaint fails, as a matter of law, to allege that the Lender Defendants acquired a "security interest" in the plaintiff's accounts.

### B. Illinois Wage Assignment Act

 Next, the Lender Defendants move to dismiss Count IV, the IWAA claim, 740 ILCS 170/.01–170/11. The IWAA renders invalid an "assignment of wages earned or to be earned" unless, *inter alia*, "[g]iven to *secure* an existing debt of the wage-earner or one contracted by the wage-earner simultaneously with its execution." 170/1(2) (emphasis added). In addition, the IWAA sets forth notice provisions and other procedures that creditors must follow in order to collect under a wage assignment. *E.g.*, 170/2–170/4. For example, the creditor may not serve an employer with a "demand" pursuant to a wage assignment unless, *inter alia*, "[t]here has been a *default* of more than 40 days in payment of the indebtedness secured by the assignment and the *default* has continued to the date of the demand." 170/2(1) (emphases added).

Because we interpret the IWAA to govern only those wage assignments that "secure" debt, 170/1(2), and that provide a method for collection upon "default," 170/2(1), we hold as a matter of law that the plaintiff fails to state a claim under the IWAA. The IWAA repeatedly refers to "default" as the triggering event at which time the creditor may make demands upon a wage assignment, *e.g.*, 170/2(1), 170/2.1 (requiring that demand form served upon the debtor's employer state that the debtor is in "default"), and thus wage assignments governed by the IWAA represent a self-help remedy for collection upon a debtor's default, *see In re Rosol,* 114 B.R. 560, 563 (Bankr.N.D.Ill.1989).[18] In the instant case, the complaint simply alleges that the defendants "[o]btain[ed] what amount to assignments of wages within the meaning of the IWAA." Compl. ¶ 103(a). However, the allegations establish that the weekly paycheck deductions represented the *method* by which the plaintiff repaid the loans—the plaintiff agreed to make the deductions

---

18. We reject the plaintiff's contention that 170/11 supports interpreting the IWAA to cover wage assignments that do not require a default. In general, 170/11 exempts court-ordered withholding of income for child and spousal support payments entered pursuant to various statutes governing family law. The plaintiff argues that the relevant statutes do not require default, or delinquency, as a precondition to ordering income withholding; the plaintiff concludes that the exemption in 170/11 would be unnecessary if the IWAA already applied only to wage assignments collectable upon default. It is true that, as of January 1, 1989, the family law provisions no longer require delinquency as a precondition of court-ordered income withholding. Illinois Public Code, 305 ILCS 5/10–16.2(B)(1) (Supp.1995); Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/706.1(B)(1) (Supp.1995); Non–Support of Spouse and Children Act, 750 ILCS 15/4.1(B)(1) (Supp.1995); Revised Uniform Reciprocal Enforcement of Support Act, 750 ILCS 20/26.1(B)(1) (Supp.1995); Paternity Act, 750 ILCS 45/20(B)(1) (Supp.1995). However, prior to 1989, the same family law provisions *did* require delinquency as a precondition of income withholding. Indeed, the Public Act that added the delinquency preconditions to the family law statutes, P.A. 83–658 (eff. Jan. 1, 1984), also added 170/11 to the IWAA. Thus, rather than suggesting a contrary interpretation, 170/11's exemption actually supports the interpretation that the IWAA only covers those wage assignments used as collection remedies upon default.

weekly, even prior to default—not the security for the loans and the collection remedy to which the Lender Defendants would resort upon default. Accordingly, we grant the defendants' motion to dismiss Count IV.

### C. Unconscionability

The Lender Defendants also move to dismiss Count V, which alleges that the loans were unconscionable primarily due to the "combined effect" of the high interest rates and the violations of consumer protection laws. Compl. ¶ 106. Under Illinois law, a contract is "unconscionable when it is so one-sided that only one under delusion would make it and only one unfair and dishonest would accept it." *In re Estate of Croake,* 161 Ill.Dec. at 211, 578 N.E.2d at 569. In addition, "[t]he term unconscionable encompasses the absence of meaningful choice by one of the parties as well as contract terms which are unreasonably favorable to the other party." *Larned v. First Chicago Corp.,* 264 Ill.App.3d 697, 201 Ill.Dec. 572, 574, 636 N.E.2d 1004, 1006 (1994).

At this stage of the litigation, we cannot hold as a matter of law that Cobb has failed to state a claim of unconscionability. The annual percentage rates charged by the Lender Defendants, ranging from 57% to 101%, appear unreasonably favorable to the lenders, and the transactions are not inconsistent with an absence of meaningful choice. Although the Lender Defendants argue in their brief that the loans "were made available without any credit check" and "included all transaction costs," Lender Defs.' Mot. at 9, the complaint does not allege these facts; determining whether the terms were "unreasonably" favorable to the Lender Defendants requires looking beyond the complaint. Similarly, although the existence of at least three finance companies willing to Lend Cobb money suggests that she exercised some choice, *see Larned,* 201 Ill.Dec. at 574, 636 N.E.2d at 1006, deciding whether the choice was "meaningful" requires a factual inquiry outside the complaint. Accordingly, we deny the Lender Defendants' motion to dismiss Count V.

### D. Illinois Consumer Fraud Act

Finally, the defendants move to dismiss Count VII, which alleges that the defendants violated the ICFA, 815 ILCS 505/1–505/12, by "engag[ing] in the conduct" alleged in the complaint. Compl. ¶ 113. More specifically, the plaintiff alleges that the Bank and Lender Defendants "agreed to ... [f]alsely represent to plaintiff and the class members that they could not revoke their authorizations to have the payments transferred to the finance company's account," Compl. ¶ 85(b), and that the Bank and Lender Defendants "ha[d] plaintiff and the class members sign a purported waiver of their right to stop payment of preauthorized electronic fund transfers at any time, as conferred by 12 C.F.R. § 205.10(c)," Compl. ¶ 97(c).[19] Section 205.10(c), a regulation promulgated pursuant to the EFTA, provides that a consumer may stop a preauthorized electronic fund transfer from her account by providing three days' notice to the bank, and the EFTA prohibits waiver of its protections, 15 U.S.C. § 1693l. In addition, the complaint alleges that the Bank and Lender Defendants "agreed to ... [e]vade giving required information to plaintiff and the class members about their accounts," Compl. ¶ 85(a), including a purported waiver of "any rights to receive any and all account statements or transaction reports concerning" the account, Compl. Exs. C, L. The EFTA requires disclosures of specific information prior to the first electronic fund transfer and also requires documentation of transfers. 15 U.S.C. §§ 1693c, 1693d; 12 C.F.R. §§ 205.7, 205.9.

These allegations state a claim under the ICFA. The ICFA prohibits

> unfair or deceptive acts of practices, including ... the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact....

505/2. Notwithstanding 505/2's language, a practice does not violate the ICFA unless it

---

19. Because we have already dismissed the alleged violations of the TILA and the TISA, we do not consider the plaintiff's allegations in support of those claims in considering the ICFA claim.

is both "unfair" *and* "deceptive," *Kedziora v. Citicorp. Nat'l Servs.,* 780 F.Supp. 516, 533–34 (N.D.Ill.1991) (citing *Laughlin v. Evanston Hospital,* 133 Ill.2d 374, 140 Ill.Dec. 861, 868, 550 N.E.2d 986, 993 (1990)). However, in order to constitute a "deceptive" practice, "[i]t is enough that a business form be 'misleading,' and whether it is in fact 'misleading' is a factual question not susceptible to decision as a matter of law." *Id.* at 534 (citing *People ex rel. Daley v. Datacom Sys.,* 146 Ill.2d 1, 165 Ill.Dec. 655, 670, 585 N.E.2d 51, 66 (1991)). The defendants argue that, because the EFTA does not cover the alleged accounts, it was not misleading to have the plaintiff waive the ability to stop the electronic fund transfers and waive the right to receive disclosures. However, because we have already held that the EFTA covers the alleged accounts, the plaintiff adequately alleges that the Bank and Lender Defendants engaged in a deceptive practice.

The defendants also contend that the allegations fail to meet the particularity requirement for allegations of fraud, Fed. R.Civ.P. 9(b). Even if Rule 9(b) applies to allegations of "deceptive" practices under 505/2 as well as fraudulent practices, we hold that the plaintiff adequately sets forth the " 'circumstances constituting fraud,' " *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (quoting Fed.R.Civ.P. 9(b)), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990)). Although the plaintiff does not specify the particular persons who devised and procured the misleading waivers, where "corporate insiders are involved and the role of each insider defendant is solely within their knowledge," the plaintiff need not specify the role of each defendant. *Marc Develop., Inc. v. Wolin,* 845 F.Supp. 547, 556

(N.D.Ill.1993). We conclude that the complaint sufficiently alleges the "who, what, where, when, and how" of the misleading practice. *DiLeo,* 901 F.2d at 627.[20]

Finally, the defendants contend that Cobb fails to state a claim for injunctive relief because only the state Attorney General may bring actions for injunctions under the ICFA. However, 505/10a(c) of the ICFA expressly provides, with an exception not relevant here, that "in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate." The defendants acknowledge that a 1991 amendment added this authorization to 505/10a, but cite cases in support of the proposition that, even after the amendment, "courts continue to dismiss claims of putative class representatives for injunctive relief under ICFA." Lender Defs.' Reply at 11. Remarkably, the defendants fail to point out that the cases to which they cite, although decided after 1991, addressed actions based on conduct occurring *prior* to the effective date of the amendment. *Sutherland v. Illinois Bell,* 254 Ill.App.3d 983, 194 Ill.Dec. 29, 31, 627 N.E.2d 145, 147 (1993); *Disc Jockey Referral Network v. Ameritech Publishing,* 230 Ill.App.3d 908, 172 Ill.Dec. 725, 727–728, 596 N.E.2d 4, 6–7, *appeal denied,* 146 Ill.2d 625, 176 Ill.Dec. 796, 602 N.E.2d 450 (1992). Because the allegedly misleading practices in this case occurred well after the effective date of 505/10a(c)'s authorization of injunctive relief, we deny the defendants' motion to dismiss the ICFA claim insofar as it seeks an injunction. In sum, we deny the defendants' motion to dismiss Count VII.

## V. Motion to Strike

Lastly, the plaintiff moves to "strike" Bank One's motion for summary

20. The defendants also argue that 505/10a(a) requires that the plaintiff "suffer[] damage as a result of a violation of this Act" in order to state a claim under the ICFA. We note, however, that "Rule 9(b) does not require any greater detail in pleading damages unless the information is necessary" to put the defendants on notice of the claim. *Williams v. Sabin,* 884 F.Supp. 294, 297 (N.D.Ill.1995). In addition, the complaint and its incorporated exhibits do reflect that the defendants' standard forms purported to waive the EFTA disclosures, and a reasonable inference is that the plaintiff in fact did not receive the required disclosures. Thus, for purposes of resolving the motion to dismiss, the complaint does allege that Cobb suffered "damage" as a result of the misleading practice. However, we observe that whether the failure to receive disclosures actually resulted in compensable, monetary damages might be the proper subject of a motion for summary judgment. *Cf. Dwyer v. American Express Co.,* 273 Ill.App.3d 742, 210 Ill.Dec. 375, 381, 652 N.E.2d 1351, 1357 (1995) (holding that the plaintiff failed to allege damages under the ICFA because "the only damages that the plaintiffs could have suffered was a surfeit of unwanted mail").

judgment. Bank One moved for summary judgment, arguing that the bank had not in fact established an account in Cobb's name. Rather, the salary deductions were made directly into Sir Finance's account at Bank One. Thus, Bank One concluded, there existed no "account" for which Bank One had to provide disclosures and other documentation. Instead of responding to the bank's summary judgment motion, the plaintiff moved to "strike" the motion, contending that Bank One's own documents contradicted the affidavit submitted by Bank One in support of summary judgment. In the alternative, Cobb moved to delay briefing on the summary judgment motion in order to conduct additional discovery.

We deny the plaintiff's motion to "strike" Bank One's summary judgment motion. Although Federal Rule of Civil Procedure 12(f) authorizes the strike pleadings containing "immaterial, impertinent or scandalous matter," there exists no express authority for "striking" a summary judgment motion. *See Hrubec v. National R.R. Passenger Corp.*, 829 F.Supp. 1502, 1506 (N.D.Ill.1993). Moreover, Rule 56(a) expressly permits the filing of a summary judgment motion "at any time after the expiration of 20 days from the commencement of the action." Therefore, we decline to "strike" Bank One's motion for summary judgment.

We also deny the plaintiff's self-styled motion for a continuance to obtain additional discovery. Rule 56(f) provides the means by which a nonmovant may seek a continuance of a summary judgment motion in order to obtain additional discovery or affidavits. However, the plaintiff does not move under Rule 56(f), and indeed fails to attach the required affidavit explaining why she needs additional discovery to respond to the summary judgment motion. *Chambers v. American Trans Air*, 17 F.3d 998, 1002 (7th), *cert. denied*, —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994). Accordingly,

we deny the plaintiff's motion to delay briefing on the summary judgment motion.

In light of our disposition, and in order to facilitate prompt disposition of Bank One's summary judgment motion, we order that the plaintiff respond to the motion within 10 days from the entry of this order, and that Bank One reply within 7 days thereafter.

## VI. Conclusion

For the reasons set forth above, we grant the motion for class certification, grant in part and deny in part the Bank Defendants' motion to dismiss, grant in part and deny in part the Lender Defendants' motion to dismiss, and deny the plaintiff's motion to "strike" Bank One's motion for summary judgment.[21] It is so ordered.

---

**21.** The remaining claims are: (a) Count I, the EFTA claim, as against the Bank and Lender Defendants; (b) Count V, the unconscionable contract claim, as against the Lender Defendants and their John Doe Defendant officers; and (c) Count VII, the ICFA claim, as against all defen-

dants. We repeat our earlier observation that, to the extent not raised by the present motions to dismiss, we have refrained from deciding the propriety of naming certain defendants in specific claims. *See supra* n. 11.