FIFTH DIVISION
July 30, 2010

No. 1-09-2318

| | | |
|---|---|---|
| FELICIA RANDLE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 09 MI 111754 |
| | ) | |
| AMERICASH LOANS, LLC., | ) | Honorable |
| | ) | Dennis M. McGuire, |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |
| | ) | |

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

This cause of action arose from the dismissal of plaintiff Felicia Randle's claim that

defendant AmeriCash Loans, LLC (AmeriCash) violated the Truth in Lending Act (TILA) (15

U.S. C. §1638 (2006)), and the Illinois Interest Act (815 ILCS 205/4 (West 2006)), by failing to

disclose a security interest. The trial court disagreed with plaintiff, granting AmeriCash's motion

to dismiss the claim. On appeal, plaintiff contends that it was improper for the trial court to

dismiss her complaint because she properly stated a cause of action. For the following reasons,

we reverse.

## I. BACKGROUND

AmeriCash is an Illinois company that provides short term loans to borrowers under the

Consumer Installment Loan Act (Loan Act) (205 ILCS 670/1 (West 2006)). On November 25,

2008, plaintiff took out a $2,000 installment loan from AmeriCash, which generated an

installment note and disclosure statement, a wage assignment form, and a loan selection, disclosure, and information form. The installment note and disclosure statement contained a "federal box" near the top of the page for Truth in Lending Act disclosures. In that box, AmeriCash disclosed the annual percentage rate, finance charge, amount financed, payment schedule, prepayment options. AmeriCash also wrote in that box, "[y]our wage assignment is security for this loan."

The loan, disclosure, and information form executed by plaintiff required her to choose from three different repayment options. Option A constituted repayment by a discretionary allotment that would automatically be deducted from the applicant's payroll check. Option B was repayment by a personal check or an electronic funds transfer from a personal checking or savings account. Option C was repayment of a signature installment loan payable by cash or money order. Plaintiff chose option A, an installment loan payable by a voluntary payroll deduction.

The loan selection, disclosure, and information form also included an "Optional Pre-Authorization to Electronic Fund Transfer" (EFT), which appeared on the second page of the form. The EFT authorization form authorized AmeriCash to electronically debit or issue a bank draft against plaintiff's check account (1) if she was in default of the loan agreement, or (2) if plaintiff provided the lender with a check as payment for an installment payment and such deposited check was subsequently dishonored by her bank, (3) if she was in default of the loan agreement, to collect the full amount of the unpaid balance due under the agreement, including late charges or returned check fees, or (4) if her automatic payroll deduction had not been

initiated prior to the due date of the first installment under the agreement. The EFT authorization further authorized AmeriCash to either (a) electronically debit or (b) issue a bank draft against the plaintiff's checking account to collect the amount of regularly scheduled payments due under the initial terms of the agreement on their regularly scheduled due dates. The following then appeared in the EFT authorization form:

> "I can revoke this authorization by giving notice of revocation to lender. Any revocation is effective only after lender has received written notice from me to revoke this authorization in such time and manner as to afford a reasonable opportunity to act upon the notice. I also have the right to stop payment of the debit entry by notification to my bank at least three business days before the scheduled date of the entry."

Plaintiff signed the EFT authorization form, but failed to specify the name of her bank, or provide her checking account number, in the spaces provided on the form.

On April 14, 2009, plaintiff filed a two-count amended complaint against AmeriCash. Count I alleged that AmeriCash violated TILA and Federal Reserve Regulation Z (12 C.F.R. § 226.17 (2008) due to its inaccurate security interest disclosures. Specifically, plaintiff alleged that the segregated federal disclosures failed to include the security interest taken in the EFT authorization. Count II alleged that AmeriCash violated the Illinois Interest Act (815 ILCS 205/4 (West 2006)). Such violation was premised on an alleged violation of the disclosure requirements of the Consumer Installment Loan Act (205 ILCS 670/16 (West 2006)), which are

3

incorporated by reference into the Illinois Interest Act. See 815 ILCS 205/4 (West 2006). However, the Consumer Installment Loan Act provides that compliance with TILA shall be deemed compliance with the disclosure requirements of the Consumer Installment Loan Act. See 205 ILCS 670/16 (West 2006). Thus, plaintiff's Illinois Interest Act claim rose and fell with her TILA claim.

On June 10, 2009, AmeriCash filed a motion to dismiss plaintiff's amended complaint, alleging that plaintiff's TILA claim, and therefore her Illinois Interest Act claim, failed as a matter of law because EFT authorizations are not security interests and the disclosures made by AmeriCash were in full compliance with all applicable statutes. It further alleged that an EFT is simply a method of payment, like a voluntary payroll deduction, which does not need to be disclosed. AmeriCash requested that the complaint be dismissed for failing to state a claim for which relief could be granted, pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615(West 2006)) .

Plaintiff then responded that the EFT authorization was the functional equivalent of a check which gave AmeriCash rights and remedies under the Illinois bad check statute and, thus provided AmeirCash with a security interest that had to be disclosed pursuant to the TILA.

AmeriCash replied that an EFT authorization is not the functional equivalent of a check because Article 3 of the Uniform Commercial Code (UCC), which includes the Illinois bad check statute, does not apply to electronic fund transfers. 810 ILCS 5/3-101 *et seq*. (West 2006). AmeriCash further alleged that an EFT authorization does not constitute a security interest under Article 9 of the UCC which provides for the creation of security interests in personal property

No. 1-09-2318

(815 ILCS 5/9-101 *et seq*. (West 2006)). It finally argued that the UCC does not apply to EFT authorizations at all because electronic fund transfers are governed by the Electronic Fund Transfer Act (EFTA) (15 U.S.C. §1693 (2006)), which does not provide for a remedy for the cancellation or rejection of an electronic funds transfer.

On September 1, 2009, arguments were heard on AmeriCash's motion to dismiss. Counsel for AmeriCash argued that plaintiff's contention was that the EFT should have been disclosed in the TILA disclosure federal box on the first page of the loan selection, disclosure, and information form. AmeriCash argued that plaintiff's argument required the trial court to find that the EFT authorization constituted a security interest and that such a finding would be wrong for several reasons: (1) the EFT form was never completed so it could not have been used; (2) the EFT authorization was disclosed, even if it was in the wrong place; (3) the EFT authorization was not required in order for the loan to be extended to plaintiff; (4) there was no grant of any interest in property as required under TILA for a security interest; and (5) the EFT authorization was voluntary and revocable by plaintiff.

Plaintiff's counsel then argued that if a borrower confers to a lender additional rights and remedies beyond those that the lender would otherwise have on the face of the document, meaning the terms of the loan agreement itself, that borrower has given the lender a security interest. Counsel alleged that in this case, the EFT authorization gave AmeriCash the right to electronically debit plaintiff's bank account and demand drafts to that account in the event of default, thus creating a security interest. Counsel further averred that plaintiff had used AmeriCash in the past, and even though she did not fill out certain portions of the EFT

5

authorization form, AmeriCash had that information on file.

The trial court found that the EFT authorization did not create additional rights and remedies; that it was not a check; that it was not a negotiable instrument; that it was not collateral; and therefore that it was not a security interest. Moreover, the trial court found that the EFT authorization form did not contain the relevant information regarding plaintiff's bank account. The trial court noted, however, that even if the relevant bank information had been on the form, its findings would remain the same. The trial court then granted AmeriCash's section 2-615 motion to dismiss. Plaintiff now appeals.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court erred in granting AmeriCash's motion to dismiss because the EFT authorization form constituted a security interest in her checking account which should have been disclosed pursuant to the TILA.

A motion to dismiss based on section 2-615 of the Illinois Code of Civil Procedure admits all well-pleaded facts and attacks the legal sufficiency of the complaint. La Salle National Bank v. City Suites, Inc., 325 Ill. App. 3d 780, 790 (2001). "The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." La Salle, 325 Ill. App. 3d at 790. Legal conclusions and factual conclusions which are not supported by allegations of specific facts will be disregarded in ruling on a motion to dismiss. La Salle, 325 Ill. App. 3d at 790. We review a dismissal of a section 2-615 motion *de novo*. La Salle, 325 Ill. App. 3d at 789.

Plaintiff contends that the EFT authorization form constituted a security interest in her checking account, which therefore should have been disclosed in the federal disclosure box on the loan agreement pursuant to TILA. Specifically, plaintiff contends that the EFT authorization afforded AmeriCash additional rights and remedies in the event that plaintiff defaulted on the loan agreement. AmeriCash responds that EFT authorizations do not constitute security interests because they are merely methods of payment and do not afford lenders additional rights and remedies. We start by looking at the applicable statute.

Congress enacted TILA to ensure that consumers receive accurate information from creditors in a precise, uniform manner that allows consumers to compare the cost of credit from various lenders. 15 U.S.C. §1601 (2006); Anderson Bros. Ford v. Valencia, 452 U.S. 205, 220, 68 L. Ed. 2d 783, 794-95, 101 S. Ct. 2266, 2274 (1981). Federal Reserve Board Regulation Z, the federal regulation promulgated pursuant to TILA, mandates that: "The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. *** The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the [required] disclosure ***." 12 C.F.R. §226.17(a)(1) (2008). The mandatory disclosures, which must be grouped in a federal disclosure section of a written loan agreement, include, among other things, the finance charge, the annual percentage rate, and any security interests that the lender takes. 12 C.F.R. §226.18 (2008).

TILA requires creditors to disclose accurately any security interest taken by the lender and to describe accurately the property in which the interest is taken. 15 U.S.C. §1638 (2006); 12

C.F.R. §226.18 (2006). TILA does not include a definition of "security interest," but Regulation Z defines it as "an interest in property that secures performance of a consumer credit obligation and that is recognized by State or Federal law." 12 C.F.R. §226.2(a)(25) (2008). Thus, the "threshold test is whether a particular interest in property is recognized as a security interest under applicable law." Official Staff Commentary, 12 C.F.R. pt. 226, Supp. I (2008).

Illinois law defines a "security interest" as "an interest in personal property *** which secures payment or performance of an obligation." 810 ILCS 5/1-201(37) (West 2006). By creating a security interest through a security agreement, a debtor provides that a creditor may, upon default, take or sell the property - or collateral - to satisfy the obligation for which the security interest is given. 810 ILCS 5/9-103(12) (West 2006) (" 'Collateral' means the property subject to a security interest," and includes accounts and chattel paper which have been sold); Smith v. The Cash Store Management, Inc., 195 F.3d 325, 329 (7th Cir. 1999) (applying Illinois law). Because TILA restricts what information a lender can include in its federal disclosures, the question before us is whether the EFT authorization form can meet the statutory requirements of "collateral" or "security interest." Smith, 195 F.3d at 329. Plaintiff submits that AmeriCash's EFT authorization form in the loan agreement is equivalent to a traditional check, which has been found to be a security interest under Illinois law.

Plaintiff primarily relies on Smith v. The Cash Store Management, Inc., 195 F.3d 325 (7th Cir. 1999), and Hahn v. McKenzie Check Advance of Illinois, LLC, 202 F.3d 998 (7th Cir. 2000), for her proposition that the EFT authorization form is equivalent to a postdated check. Because little Illinois case law addresses TILA security interest disclosure requirements, reliance

on Seventh Circuit precedent interpreting those requirements is appropriate. See Wilson v. Norfolk & Western Ry. Co., 187 Ill. 2d 369, 383 (1999). "The reason that federal decisions are considered controlling on Illinois state courts interpreting a federal statute *** is so that the statute will be given uniform application." Wilson, 187 Ill. 2d at 383, citing Busch v. Graphic Color Corp., 169 Ill. 2d 325, 335 (1996). Accordingly, we find the parties' reliance on primarily federal cases to be appropriate in this case.

In Smith, the court noted that "[i]t is the economic substance of the transaction that determines whether the check serves as collateral," and that neither "ease of recovery in the event of default nor the simple fact that a check is an instrument are sufficient to create a security interest." Smith, 195 F.3d at 329. In both Smith and Hahn, the Seventh Circuit held that a postdated check with a high-interest consumer loan was a security interest because the check confers rights and remedies in addition to those under the loan agreement. Smith, 195 F.3d at 329; Hahn, 202 F.3d at 999. The Seventh Circuit noted that a second promise to pay, identical to the first, would not serve as collateral to secure a loan because the second promise is of no economic significance: in the event that the borrower defaults on the first promise, the second promise provides nothing in economic value that the creditor could seize and apply towards loan repayment. Smith, 195 F.3d at 330.

However, the court in Smith found that a postdated check was not merely a second, identical promise to pay, but rather granted the lender additional rights and remedies under the Illinois bad check statute (810 ILCS 5/3-806 (West 2006)), which mandates that if a check is not honored, the drawer shall be liable for interest and costs and expenses incurred in the collection

9

of the amount of the check. <u>Smith</u>, 195 F.3d at 330. The <u>Smith</u> court reasoned:

> "[I]t is its extrinsic legal status and the legal rights and remedies granted the holder of the check, like the holder of a loan agreement, that give rise to its value. Upon default on the loan agreement, Cash Store would get use of the check, along with the rights that go with it. Cash Store could simply negotiate it to someone else. Cash Store could take it to the bank and present it for payment. If denied, Cash Store could pursue bad check litigation. Additional value is created through these rights because Cash Store need not renegotiate or litigate the loan agreement as its only avenue of recourse." <u>Smith</u>, 195 F.3d at 330.

Plaintiff argues the EFT authorization form at issue in the case at bar granted AmeriCash the right to issue bank drafts against plaintiff's checking account for the total amount due under the agreement, and that bank drafts are legally equivalent to traditional checks under the Illinois Uniform Commercial Code (See 12 C.F.R. pts. 210, 229 (2008)). Thus, plaintiff argues that AmeriCash has additional rights and remedies of negotiation, transfer, and bad check remedies. Moreover, plaintiffs contend that the EFT authorization is not merely a second, identical promise to pay because it authorizes AmeriCash to debit her account in the event of default, for the full amount of the unpaid balance including late fees or returned checks.

AmeriCash responds that the EFT authorization is simply a mechanism to facilitate repayment of a loan and is not a security interest. AmeriCash urges us to find, relying on <u>Cobb</u>

10

v. Monarch Financial Corp., 913 F. Supp. 1164 (N.D. Ill. 1995), that EFT authorizations are nearly identical to voluntary payroll deductions, which are mechanisms or methods of payment and nothing more. In Cobb, a debtor brought suit against a group of lenders, claiming that the discretionary allotment executed as part of the loan agreement created a security interest in the debtor's accounts. Cobb, 913 F. Supp. at 1177-78. The complaint alleged that, because the security interest in the discretionary allotment was not disclosed by the creditors, their disclosure statements violated the TILA. The loan agreements allegedly prohibited the debtor from cancelling the discretionary allotment until the loan was paid in full and prohibited the debtor from withdrawing funds from the accounts without defendants' permission. The court found that defendants' alleged interest in the plaintiff's accounts did not secure performance of the loan obligation within the meaning of Regulation Z because the discretionary allotment served to facilitate repayment of the loans, not to secure repayment upon default. Cobb, 913 F. Supp. at 1177-78. The court granted defendants' motion to dismiss finding that the complaint failed, as a matter of law, to allege that defendants had acquired a security interest in plaintiff's accounts, which was required to sustain a TILA claim. Cobb, 913 F. Supp. at 1178.

AmeriCash notes that the only difference between Cobb and the case at bar is that Cobb involved a voluntary payroll deduction, while this case involves an electronic fund transfer. Nevertheless, AmeriCash maintains that an electronic fund transfer is almost identical to a voluntary discretionary allotment, which has been found to be a "mere devices for consumers to make regular payments." See 16 C.F.R. pt. 444 (1985).

We note, however, that the Northern District of Illinois, the same court that decided Cobb

more than 10 years ago, recently issued the case of Pinkett v. First Citizens Bank, No. 09 C 2365 (N.D. Ill. May 10, 2010) (mem. op. & order), which expressly addresses the issue at bar. In Pinkett, the plaintiff completed a one-page application to request a loan. The plaintiff also completed other loan documentation, including an Electronic Funds Transfer and Authorization Agreement. Plaintiff sued Norwest Capital, claiming it took a security interest when it obtained the authorization agreement on his checking account. Pinkett, slip op. at 5. Norwest Capital responded that the authorization only served to facilitate the repayment of loans, and not to secure repayment upon default, citing Cobb. Pinkett, slip op. at 5.

The court in Pinkett noted that the "Seventh Circuit makes clear that an instrument that grants a creditor rights to collect the debt beyond those contained in the loan agreement must be disclosed as a security instrument." Pinkett, slip op. at 4, citing Hahn, 202 F.3d 998, and Smith, 195 F.3d 325. The Pinkett court found Cobb to be irrelevant because in that case the account in Cobb into which allotments from the plaintiff's check were deposited to later be paid to the creditor was simply a mechanism to facilitate repayment. Cobb, 913 F.Supp. at 1178; Pinkett, slip op. at 5. The Pinkett court stated:

> "The authorization agreement states specifically that Norwest
>
> Capital is authorized to initiate debit entries into Pinkett's personal
>
> checking account (not the allotment account), that Pinkett could
>
> not terminate the agreement without written notice to Norwest
>
> Capital in sufficient time for it to act on their rights, and that any
>
> debit to the account that was returned unpaid could be collected in

12

the same manner as an unpaid paper check. The authorization, then, allowed Norwest Capital to debit Pinkett's personal checking account if he reneged on his promise to repay the loan through the allotment system." Pinkett, slip op. at 5.

Norwest Capital maintained that Pinkett would have an opportunity to block it from debiting the account, but the court found that so too would a plaintiff have an opportunity to block a party from cashing a post-dated check, and in "either instance, the creditor could pursue remedies under Illinois' bad check statute." Pinkett, slip op. at 5. The court concluded that it was clear Norwest Capital had the authority to use the debit authorization to Pinkett's account in the event that he defaulted, and thus Pinkett properly stated a claim that Norwest Capital took a security interest in his checking account. Pinkett, slip op. at 5.

We find the holding in Pinkett to be controlling in this case. Here, the EFT authorization, like the authorization in Pinkett, states specifically that AmeriCash is authorized to initiate debit entries into plaintiff's checking account, that plaintiff could not terminate the agreement without written notice to AmeriCash in sufficient time for it to act on its rights, and that any debit to the account that was returned unpaid could be collected in the same manner as an unpaid paper check. The authorization, then, allows AmeriCash to debit plaintiff's checking account if she reneged on her promise to repay the loan through the wage allotment option. Thus, we find that plaintiff sufficiently stated a claim that AmeriCash took a security interest in her checking account.

We decline to address the issue of how the blank portions of the EFT authorization form

13

affect the EFT authorization's security interest status since the trial court has not yet had a chance to do so. Plaintiff attempted to amend her complaint with additional information regarding AmeriCash's access to her bank account information, which was denied by the trial court at the same time plaintiff's claim was dismissed. Accordingly, we reverse the trial court's dismissal of plaintiff's claim for failing to state a cause of action for which relief could be granted, and are confident that the issue of blank spaces on the EFT authorization form will be resolved in further proceedings in the trial court.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

Judgment reversed.

HOWSE and LAVIN, JJ., concur.