2023 IL App (1st) 230740

FOURTH DIVISION
Opinion filed: October 12, 2023

No. 1-23-0740

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| LAURA LENZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| | ) | |
| v. | ) | No. 2022 L 1508 |
| | ) | |
| | ) | |
| ADVOCATE HEALTH AND HOSPITALS CORP. | ) | |
| d/b/a ADVOCATE CHRIST MEDICAL CENTER, | ) | Honorable |
| | ) | John J. Curry, Jr., |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Laura Lenz, appeals from the circuit court's order dismissing her complaint

for unlawful discrimination against the defendant, Advocate Health and Hospital Corp. d/b/a

Advocate Christ Medical Center (Advocate).  For the reasons which follow, we affirm the

judgment of the circuit court.

¶ 2     On February 15, 2022, the plaintiff filed a complaint in the instant action, charging that Advocate discriminated against her in violated section 5 of the Illinois Health Care Right of Conscience Act (Act) (745 ILCS 70/5 (West 2020)).  Specifically, the complaint alleged the following.  On or about August 4, 2021, Advocate released its Immunization Policy which required the plaintiff and other employees to either provide proof of completion of the COVID-19 immunization series by October 15, 2021, or receive an approved religious exemption.  On August 10, 2021, the plaintiff submitted a request for a religious exemption from Advocate's immunization requirements.  On September 3, 2021, Advocate denied the plaintiff's request, claiming that it was made "based on misinformation."  On September 7, 2021, the plaintiff filed an appeal from the denial which Advocate denied stating that the request was "missing sincere religious belief."  On October 15, 2021, Advocate fired the plaintiff from her position as a nurse. She alleged that she was fired in violation of section 5 of the Act for refusing to receive health care services contrary to her conscientious convictions.

¶ 3     On April 15, 2022, Advocate filed a combined motion pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)), seeking dismissal of the plaintiff's complaint.  Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), Advocate argued that the plaintiff's complaint failed to state a claim under the Act.  Pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), Advocate alleged both that the Act provides no protection for healthcare employees who refuse to comply with their employer's mandate to receive vaccination against COVID-19, and that the plaintiff's claim under the Act is preempted by federal law.  During the course of briefing the motion before the trial court, Advocate filed the declarations of Dr. Allison Arwady, Commissioner of Public Health of the City of Chicago; Dr. Arti Barnes, Medical Director and Chief Medical Officer of the Illinois Department

of Health; and Dr. Robert Citronberg, Advocate's Executive Medical Director, Infectious Diseases and Prevention.

¶ 4    On October 20, 2022, the circuit court denied Advocate's motion to dismiss.  In so ruling, the circuit court did not address Advocate's federal preemption argument other than to deny that portion of Advocate's motion without prejudice.

¶ 5    On November 10, 2022, Advocate filed its answer and affirmative defenses.  In its answer, Advocate admitted that it had an Immunization Policy that required the plaintiff and other employees to provide proof of completion of the COVID-19 immunization series by October 15, 2021, admitted that the plaintiff's employment ended on October 15, 2021, and denied that its actions were unlawful.   For its affirmative defenses, Advocate argued that the plaintiff's claim is barred both by section 13.5 of the Act (745 ILCS 70/13.5 (West Supp. 2021)) and by federal preemption.

¶ 6    On February 1, 2023, Advocate filed a motion seeking reconsideration of the denial of its motion to dismiss.  In so moving, it relied upon the November 14, 2022, opinion filed in *Krewionek v. McKnight,* 2022 IL App (2d) 220078, which held that the enactment of section 13.5 of the Act removes employer requirements intended to prevent contraction or transmission of COVID-19 from the protection afforded under the Act.  *Id.* ¶ 38.

¶ 7    On March 30, 2023, the circuit granted Advocate's motion to reconsider, vacated its order of October 20, 2022, which denied Advocate's motion to dismiss, and dismissed the plaintiff's complaint pursuant to section 2-619(a)(9).   This appeal followed.

¶ 8    In urging reversal of the circuit court's order dismissing her complaint, the plaintiff argues, *inter alia,* that the Act forbids her firing for adhering to her religious opposition to vaccines.  She asserts that section 5 of the Act makes it unlawful for any institution to discriminate against a

person in any manner because of that person's conscience refusal to receive health care services contrary to her conscience, and that section 12 of the Act (745 ILCS 70/12 (West 2020)) provides for a private right of action against any entity or health care facility "by reason of any action prohibited by *** [the] Act." Advocate argues that section 13.5 of the Act expressly bars the plaintiff's claim. The plaintiff argues that the provisions of section 13.5 will not bar her action absent proof that Advocate's Immunization Policy "was intended to stop the spread of COVID." She contends that the applicability of section 13.5 is a question of fact, the resolution of which is inappropriate in the context of a motion to dismiss.

¶ 9     This case comes to us on appeal from an order dismissing the plaintiff's complaint pursuant to section 2-619(a)(9) of the Code which provides for involuntary dismissal in cases where "the claim asserted against the defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). Our review is *de novo. Kedzie & 103rd Currency Exchange Inc. v. Hodge,* 156 Ill. 2d 112, 116 (1993). In conducting that review, we accept as true all well-pleaded facts in the plaintiff's complaint and draw all reasonable inferences from those facts which are favorable to the plaintiff. *Sandholm v. Kuecker,* 2012 IL 111443, ¶ 55. Our function is to determine "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange Inc.,* 156 Ill. 2d at 116-17.

¶ 10     It is not disputed that section 5 of the Act provides that it is unlawful for any institution to discriminate against any person in any manner because of that person's conscience refusal to receive health care services contrary to her conscience. 745 ILCS 70/5 (West 2020). It is also undisputed that section 12 of the Act provides in relevant part that: "Any person *** injured by any public or private *** corporation by reason of any action prohibited by *** [the] Act may

commence a suit therefore." 745 ILCS 70/12 (West 2020). To state a claim for employment discrimination predicated on a violation of section 5 of the Act under the circumstance present in this case, the plaintiff was required to allege (1) that she refused to receive COVID-19 immunization contrary to her conscience, (2) that Advocate knew of her conscientious beliefs, and (3) that Advocate fired her because she refused to receive COVID-19 immunization contrary to her conscience. See Rojas *v. Martell,* 2020 IL App (2d) 190215, ¶ 50,

¶ 11    As noted earlier, the plaintiff's complaint set forth factual allegations supporting each of the elements of a claim for employment discrimination based on Advocate's alleged violation of section 5 of the Act.    Advocate sought dismissal pursuant to section 2-619 of the Code.    The motion assumes that a cause of action has been stated, but asserts affirmative matter that bars the plaintiff's claim.  *Lake Point Tower Condominium Ass'n v. Waller,* 2017 IL App (1st) 162072, ¶ 11.  The affirmative matter in this case is section 13.5 of the Act which provides as follows:

> "Violations related to COVID-19 requirements.  It is not a violation of this Act for any person or public official, or for any public or private association, agency, corporation, entity, institution, or employer, to take any measure or impose any requirements, including, but not limited to, any measure or requirements that involve provision of services by a physician or health care personnel, intended to prevent contraction or transmission of COVID-19 or any pathogens that result in COVID-19 or any of its subsequent iterations. It is not a violation of this Act to enforce such measures or requirements. This Section is a declaration of existing law and shall not be construed as a new enactment.  Accordingly, this Section shall apply to all actions commenced or pending on or after the effective date of this amendatory Act of the 102nd General Assembly.  Nothing in this Section is intended to affect any right or remedy under federal law." 745 ILCS 70/13.5 (West Supp. 2021).

The statute was passed by the General Assembly on November 8, 2021, and had an effective date of June 1, 2022. By its very terms, the statute applies to the plaintiff's action which was pending on its effective date.

¶ 12   Advocate argues that section 13.5 of the Act is an absolute bar to the plaintiff's action. As noted earlier, the plaintiff argues that the provisions of section 13.5 will not bar her action absent proof that Advocate's Immunization Policy "was intended to stop the spread of COVID." She contends that the applicability of section 13.5 is a question of fact, the resolution of which is inappropriate in the context of a motion to dismiss. Advocate counters that the rationale employed by the plaintiff in support of her arguments in this regard is the same as was rejected in *Krewionek,* 2022 IL App (2d) 220078. Our resolution of the question of whether the plaintiff's action is barred by section 13.5 is based on our interpretation of that statute.

¶ 13   The construction of a statute is a question of law which we resolve *de novo.* Rojas*,* 2020 IL App (2d) 190215, ¶ 19. "The primary rule of statutory interpretation, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature." *Bonaguro v. County Officers Electoral Board,* 158 Ill. 2d 391, 397 (1994). The best indication of legislative intent is the plain language of the statute. Rojas*,* 2020 IL App (2d) 190215, ¶ 20. When the language of the statute is clear and unambiguous, the language will be given effect as written without resort to any other principle of statutory construction. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.,* 158 Ill. 2d 76, 81 (1994). If the language of a statute is ambiguous, we resort to other principles of statutory construction. *Id.* A statute is ambiguous when it is susceptible to more than one reasonable interpretation. *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n,* 233 Ill. 2d 125, 136 (2009). A statute is not ambiguous merely because the parties disagree about its meaning. *Castro v. Police Board,* 2016

IL App (1st) 142050, ¶ 32. The question of whether a statute is ambiguous is one of law which we resolve *de novo. Freeman United Coal Mining Co. v Industrial Comm'n,* 317 Ill. App. 3d 497. 503 (2000).

¶ 14    We find no ambiguity in the language of section 13.5 of the Act. By the plain terms of the statute, it is not a violation of the Act for any public or private corporation or entity to take any measure, or impose any requirements, intended to prevent contraction or transmission of COVID-19 or any pathogens that result in COVID-19 or any of its subsequent iterations; nor is it a violation of the Act to enforce such measures or requirements. According to the plaintiff, the phrase "intended to prevent contraction or transmission of COVID-19" means a measure or requirement that "was intended to stop the spread of COVID." She argues that the word "prevent" must be interpreted to mean to "stop." In rejecting this very argument, the court in *Krewionek* wrote:

> "Initially, we note that section 13.5 and the phrase "intended to prevent contraction or transmission of COVID-19" is not ambiguous as applied to a healthcare employer's requirement that all employees receive a COVID-19 vaccination. We disagree that the word "prevent" exclusively invokes the concept of impossibility. Even the definition of prevent cited by the plaintiffs does not require impossibility; it provides that to prevent means to render an event impractical or impossible. Plaintiffs have focused on a single definition of prevent that requires that a preventative measure will render an event impossible to the exclusion of other definitions of prevent that carry no such implication."
>
> *Krewionek,* 2022 IL App (2d) 220078, ¶ 34.

After giving several examples of dictionary definitions of "prevent" that contain concepts much broader than merely to stop, such as to hinder and to interpose an obstacle, the court in *Krewionek* went on to find that: "Plainly, a measure aimed at creating a high degree of resistance to a disease

is a measure intended to prevent, *i.e.,* to hinder or impose an obstacle to, the contraction and transmission of that disease." *Id.,* ¶ 35.

¶ 15    We need not, however, resolve the debate between the parties as to the definition of the word "prevent" as used in section 13.5. Absent from the plaintiff's analysis is a recognition that the statute does not require that that the measures or requirements adopted by an employer actually prevent contraction or transmission of COVID-19; rather, it requires only that the measure or requirement imposed be "*intended* to prevent contraction or transmission of COVID-19." (Emphasis added.)  745 ILCS 70/13.5 (West Supp. 2021).

¶ 16    In this case, Advocate filed the declaration of Dr. Citronberg, its Executive Medical Director, Infectious Diseases and Prevention. Under penalties of perjury, Dr. Citronberg attested to the following. He was significantly involved in Advocate's decision in 2021 to mandate the COVID-19 vaccine for all employees." The "requirement was intended to prevent the transmission and contraction of COVID-19 among Advocate's patients, employees, and the communities we serve." The purpose of Advocate's Immunization Policy is to "'minimize transmission of infectious diseases in the workplace and the communities we serve by providing occupational protection to Healthcare Professionals, thus preventing transmission of infectious diseases.'" Dr. Citronberg went on to state that "Advocate decided to mandate that all employees receive the COVID-19 vaccination as a condition of employment in order to prevent contraction and transmission of the virus in the most effective way possible." He concluded that "Advocate's COVID-19 mandate was effective in preventing the contraction and transmission of COVID-19 and preventing severe sickness." The plaintiff filed no counter-affidavit or declaration.

¶ 17    The plaintiff relies upon the declarations of Drs. Barnes and Arwady in support of her argument that vaccination for COVID-19 does not prevent the contraction or transmission of the

virus because vaccinated individuals can still acquire and spread the virus. The argument misses the point. Had the legislature provided that it is not a violation of the Act for an entity to adopt and enforce a measure or requirements that *actually* prevent contraction or transmission of COVID-19, the plaintiff's argument might have some merit. However, the plain and unambiguous language of section 13.5 provides that it is not a violation of the Act for any person, entity, or corporation to take any measure or impose any requirements *intended* to prevent the contraction or transmission of COVID-19. Dr. Citronberg's declaration established that Advocate's decision to mandate the COVID-19 vaccine for all employees was intended to prevent the transmission and contraction of COVID-19, which is all that section 13.5 requires. So long as Advocate adopted its Immunization Policy with the intention to prevent the transmission and contraction of COVID-19, as Dr. Citronberg has stated, then it was not a violation of the Conscience Act for Advocate to enforce that policy. 745 ILCS 70/13.5 (West Supp. 2021).

¶ 18 Having found that Advocate met its burden of establishing that it adopted its Immunization Policy with the intention of preventing the transmission and contraction of COVID-19, we conclude that there is no genuine issue of fact on the question of whether Advocate violated the Act when it adopted its Immunization Policy which required the plaintiff and other employees to either provide proof of COVID-19 immunization by October 15, 2021, or receive an approved religious exemption, or when it terminated the plaintiff for noncompliance.

¶ 19 Based on the foregoing analysis, we affirm the circuit court's order granting Advocate's motion pursuant to section 2-619(a)(9) of the Code and dismissing the plaintiff's action. Having resolved this appeal based on the provisions of section 13.5 of the Act, we need not address Advocate's additional argument that federal law expressly preempts the plaintiff's action.

¶ 20 Affirmed.

---

*Len v. Advocate Health,* **2023 IL App (1st) 230740**

---

**Decision Under Review:**     Appeal from the Circuit Court of Cook County, No. 2022 L 1508; the Hon. John J. Curry, Jr., Judge, presiding.

---

Attorneys for Appellant:     Jared M. Schneider, Esq.
400 W. 7th Street, Suite 105c
Bloomington, IN 47404
Phone:  812.758.4888

Attorneys for Appellee:     Michael Resis and Heather Bailey
Amundsen Davis LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL   60601
Phone:  312.894.3200