2025 IL App (3d) 240414

Opinion filed July 31, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| LINDSAY KOPP, KAYLA BOGDA, MARISSA WILLIS, KATHLEEN LOBAN, AMANDA GRANAT, CAROLINE HANNA, CHANEL KRANTZ, KATHRYN KERRICK, CYNTHIA ANTONELLI, DEBORAH YAGER, ERIKA CARTER, JUDITH RATHERT, KATHLEEN SPECKMAN, KATLIN CARLI, ESTRELLA SANTIAGO-HUGHES, KRISTEN MCCAULEY, MARIA SCHAHCZINSKI, KRISTIN PIGNOTTI, MEGHAN MULCAHY, RACHEL ANDRADE-RYAN, STEPHANIE KOZLOWSKI, ANGELIZA MONTGOMERY, JAIMIE JANIK, JAYME REDA, KATHLEEN TUCCI, SEAN MCNAMARA, LAURA PORTWOOD, MANDIE HART, BRANDON CONDON, COLLEEN LINDBLOOM, SANDY RAGLAND, JULIE LICEAGA, JEANETTE MARBACK, JOLANTA MIERNY, JOY GARZA, BRYAN DEANG, JANETTE NORDSTROM-MOSSBERGER, DEBBIE HAMEL, ERIN WILKAS, TARA MUSSELMAN, AMANDA KARAS, RAQUEL MAGOON, and AMANDA LINDEMULDER, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois.<br><br>Appeal No. 3-24-0414<br>Circuit No. 2021-CH-400<br><br>The Honorable<br>Roger D. Rickmon,<br>Judge, presiding. |
| Plaintiffs-Appellants, | )<br>) | |
| v. | )<br>) | |
| SILVER CROSS HOSPITAL AND MEDICAL CENTER, | )<br>)<br>)<br>) | |
| Defendant-Appellee. | )<br>) | |

_____

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justices Holdridge and Peterson concurred in the judgment and opinion.
_____

**OPINION**

¶ 1         Plaintiffs worked at Silver Cross Hospital in various healthcare and non-healthcare capacities. Silver Cross required that its employees be vaccinated for COVID-19. Plaintiffs refused, claiming that doing so would violate their sincerely held religious beliefs. Silver Cross determined that plaintiffs were not entitled to a religious exemption from the vaccination requirement, and plaintiffs' employment ended. Plaintiffs sued, asserting claims under the Health Care Right of Conscience Act (Act) (745 ILCS 70/1 *et seq.* (West 2020)) and for common law retaliatory discharge. The circuit court dismissed all plaintiffs' claims. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3         On August 26, 2021, Illinois Governor J.B. Pritzker enacted Executive Order 2021-20 (EO), mandating that all health care workers receive the COVID-19 vaccine. Exec. Order No. 2021-20, 45 Ill. Reg. 11,429 (Aug. 26, 2021), https://www.illinois.gov/content/dam/soi/en/web/illinois/documents/government/executive-orders/2021/executive-order-2021-20.pdf [https://perma.cc/R287-VWLT]. The EO provided that individuals would be exempt from the required COVID-19 vaccination, but must be tested weekly, if vaccination violated a sincerely held religious belief.

¶ 4         Following the EO, Silver Cross issued its own vaccine policy, requiring all "employees, remote workers, medical staff members, volunteers, students and vendors" working at the hospital to receive at least a first dose of the COVID-19 vaccine by October 31, 2021, as a condition of their continued employment. Like the EO, Silver Cross's policy had an exception for objections

2

based on sincerely held religious beliefs. Specifically, the policy required individuals asserting a religious objection to submit a request form that would be evaluated by a hospital ethics committee. If granted, the individuals would remain employed but would be required to follow all hospital policies to limit COVID exposure, including wearing masks. If denied an exemption, individuals could appeal the decision through an internal administrative process. Any worker who failed to comply with the policy would initially be placed on unpaid leave for 10 days. Continued noncompliance could lead to the individual being deemed to have voluntarily resigned.

¶ 5    Plaintiffs submitted requests for religious exemption. While Silver Cross granted a number of religious exemption requests to others, plaintiffs' requests were denied. Plaintiffs appealed their denials, and the appeals were administratively denied. As of October 31, 2021, plaintiffs had not been vaccinated and did not have an approved request for religious exemption.

¶ 6    What happened next is largely a matter of perspective. Effective November 1, 2021, Silver Cross removed plaintiffs from its shift schedules. Plaintiffs allege they were constructively terminated, while Silver Cross takes the position that plaintiffs effectively resigned. Either way, as of November 15, 2021, plaintiffs were no longer considered employees at Silver Cross Hospital.

¶ 7    Plaintiffs originally filed a two-count complaint in the circuit court of Will County that they amended on November 29, 2021. The first amended complaint (FAC) against Silver Cross asserted two only claims: Count I—violations of the Act (745 ILCS 70/1 *et seq.* (West 2020)) and Count II—retaliatory discharge.

¶ 8    In January 2022, Silver Cross moved to dismiss the FAC under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)). Regarding Count I, Silver Cross argued that (a) plaintiffs had not stated a claim under section 5 (745 ILCS 70/5 (West 2020)) because the Act did not protect only protected acts that involved the provision of healthcare services and (b)

the then-pending but not yet effective section 13.5 of the Act (745 ILCS 70/13.5 (West 2022)) would bar plaintiffs' claims. Relative to Count II, Silver Cross contended that plaintiffs failed to state a claim for retaliatory discharge because they were not purportedly discharged in retaliation for protected activity and, even if they had been, plaintiffs who have been constructively discharged (rather than actively discharged) cannot bring retaliatory discharge claims.

¶ 9 In August 2022, the circuit court initially denied Silver Cross's motion to dismiss. Silver Cross first unsuccessfully sought to appeal the dismissal and then unsuccessfully sought a motion for supervisory order from the Illinois Supreme Court.

¶ 10 On October 25, 2022, Plaintiffs filed their second amended complaint (SAC). Plaintiffs' claims in the SAC are functionally identical to those in the FAC and continue to assert violation of the Act and retaliatory discharge. No other issues or claims are raised.

¶ 11 In December 2023, Silver Cross filed a motion to reconsider the August 2022 denial of its dismissal motion. Silver Cross contended that the trial court misapplied the Act and erroneously interpreted section 13.5 of the Act (which, by that point, had gone into effect). Further, Silver Cross was armed with the 2023 decision in *Lenz v. Advocate Health & Hospitals Corp.*, 2023 IL App (1st) 230740, a factually similar case. The circuit court granted Silver Cross's motion to reconsider and dismissed the SAC with prejudice. This appeal followed.

¶ 12                                               II. ANALYSIS

¶ 13 A motion to dismiss pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2020)) of the Code of Civil Procedure allows parties to blend motions brought pursuant to section 2-615 (*id.* § 2-615) and 2-619 (*id.* § 2-619) into one pleading but requires the combined motion to be divided into parts, with each part limited to the points or grounds of either section 2-615 or section 2-619.

¶ 14        "[A] motion to dismiss under section 2-615 differs significantly from a motion for involuntary dismissal under section 2-619." *Becker v. Zellner*, 292 Ill. App. 3d 116, 122 (1997). "[A] section 2-615 motion is based on the pleadings rather than on the underlying facts." *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29 (2003). A section 2-615 motion is solely concerned with defects on the face of the complaint. *Becker*, 292 Ill. App. 3d at 122. It admits "all well-pleaded facts and attacks the legal sufficiency of the complaint." *Randle v. AmeriCash Loans, LLC*, 403 Ill. App. 3d 529, 533 (2010). In ruling on a section 2-615 motion, the allegations in the pleadings are the only matters that the court is to consider. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485 (1994).

¶ 15        In contrast, a motion brought pursuant to section 2-619 of the Code " 'admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim.' " *Becker*, 292 Ill. App. 3d at 122 (quoting *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21 (1997)). It assumes that a cause of action has been stated. *Cwikla*, 345 Ill. App. 3d at 29. A section 2-619 motion "raises defects, defenses or other affirmative matter which appears on the face of the complaint or is established by external submissions which act to defeat the plaintiff's claim." *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (2000). "[A] section 2-619 proceeding enables the court to dismiss the complaint after considering issues of law or easily proved issues of fact." *Id.* at 585. In ruling on a section 2-619 motion, the circuit court may consider the pleadings, depositions, and affidavits. *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 296 (1997).

¶ 16        Before we get to the merits of the case before us, we must acknowledge the existence of two procedural hiccups. First, the trial judge did not identify whether his dismissal order was based on section 2-615 or, alternatively, section 2-619 grounds. Either way, our review is *de novo*. *Turner v. Joliet Police Department*, 2019 IL App (3d) 170819, ¶ 9. Second, the original motion to

dismiss was directed against the FAC, but by the time the motion to reconsider was filed, heard, and ruled upon, the SAC was the operative pleading. Given that (1) the FAC and SAC are substantively identical for purposes of our analysis, (2) it was the SAC that was ultimately dismissed, (3) motions are to be considered based on their substance rather than their label, and (4) the parties do not seem to have a concern with this issue, we will treat the motion to reconsider as a motion to dismiss the SAC.

¶ 17                              A. The Text, History, and Interpretation of the Act

¶ 18         In *Rojas v. Martell*, 2020 IL App (2d) 190215, the court examined the history and purpose of the Act. Per *Rojas*, in the wake of *Roe v. Wade*, 410 U.S. 113 (1973), "a variety of legislation was enacted at the federal and state levels to address the moral dilemma in which health care providers might find themselves if called upon to provide services that are contrary to their consciences." *Rojas*, 2020 IL App (2d) 190215, ¶ 23. In Illinois, that response came in the form of the Act, enacted in 1977. See *id.*

¶ 19         The legislative history of the Act supports the conclusion that it was intended to protect health care providers from performing reproductive health services when those services conflict with the providers' conscience (*i.e.*, religious beliefs). During the legislative debate, Senator Phillip Rock stated that the Act would "allow hospitals and medical personnel the right not to participate in medical procedures with which they *** do not agree in conscience." 80th Ill. Gen. Assem., Senate Proceedings, June 22, 1977, at 377 (statements of Senator Rock). He further explained that the Act further included "medical procedures such as sterilization or advice on family planning." *Id.* He was then asked, "How about the reverse situation where there is a Christian Science participant *** can they have a right to refuse treatment *** if a patient or the parent of the patient does not want any services?" 80th Ill. Gen. Assem., Senate Proceedings, June

6

22, 1977, at 377-78 (statements of Senator Maragos). "No," he responded, "they have that right currently and this Act does not change that." 80th Ill. Gen. Assem., Senate Proceedings, June 22, 1977, at 378 (statements of Senator Rock).

¶ 20 The problem with Senator Rock's interpretation of the Act is that the statute's language suggests a far broader application. See generally Matthew Moustis, *COVID-19 & The Illinois Health Care Right of Conscience Act: A Legal Analysis*, 43 N. Ill. Univ. L. Rev. 1 (2022). Section 5 of the Act provides, in pertinent part:

> "It shall be unlawful for any *** institution *** to discriminate against any person in any manner, including but not limited to *** hiring, *** staff appointment, hospital *** or any other privileges, because of such person's conscientious refusal to receive, obtain, accept, *** or participate in any way in any particular form of health care services contrary to his or her conscience." 745 ILCS 70/5 (West 2020).

¶ 21 When COVID-19 arrived, the virus brought with it innumerable pieces of accessory baggage that eventually included a vaccine, employers who wanted their employees to take the vaccine, and employees who did not wish to take it. Lawsuits ensued, and many of those lawsuits implicated the intent and meaning of the Act. Specifically, many of those lawsuits involved litigants who sought to use section 5 as a shield against unwanted vaccination requirements.

¶ 22 In 2022, the legislature enacted section 13.5 of the Act. Section 13.5 specifically applied to situations involving COVID-19, and, in relevant part, provides:

> "It is not a violation of this Act for any person ***, corporation, entity, institution, or employer, to take any measures or impose any requirements, including, but not limited to, any measures or requirements that involve provision of services by a physician or health care personnel, intended to prevent contraction or transmission

7

of COVID-19 \*\*\*. It is not a violation of this Act to enforce such measures or requirements." 745 ILCS 70/13.5 (West 2022).

¶ 23    Section 13.5 further provides that the section is "a declaration of existing law and shall not be construed as a new enactment" and applies to "all actions commenced or pending on or after" its June 1, 2022, effective date. *Id.* Rejecting an ostensibly reasonable interpretation to the contrary, courts have held that section 13.5 is, indeed, a declaration of existing law. See *Lenz*, 2023 IL App (1st) 230740, ¶ 19 (holding that section 13.5 bars claim that employer's COVID-19 vaccination requirement violated the Act); *Krewionek v. McKnight*, 2022 IL App (2d) 220078, ¶ 38 (same); *Glass v. Department of Corrections*, 2022 IL App (4th) 220270, ¶¶ 23-24 (finding ambiguity in the Act and holding that section 13.5 is an "interpretive aid" for the ambiguous sections); *Boone v. Illinois Department of Corrections*, No. 3:21-cv-03229-JES-JEH, 2024 WL 4750494, at \*2 (7th Cir. Nov. 12, 2024); *Dennard v. Astellas Pharma US, Inc.*, No. 22-cv-02836, 2024 WL 4346887, at \*4 (N.D. Ill. Sept. 30, 2024); *Locke v. Chicago Family Health Center*, No. 23-cv-04650, 2024 WL 4203083, at \*2 (N.D. Ill. Sept. 16, 2024). Because Plaintiffs present no compelling argument for us to depart from the view taken in those decisions, we adopt the conclusion that section 13.5 is, in fact, a declaration of existing law.

¶ 24                    B. Plaintiffs' Claims Under the Act

¶ 25    Since the arrival of COVID-19, courts in Illinois have repeatedly grappled with claims asserted pursuant to the Act when a healthcare organization or other employer required its unwilling employees to be vaccinated for COVID-19. If history is a guide, plaintiffs have an uphill battle. See, *e.g.*, *Lenz*, 2023 IL App (1st) 230740; *Krewionek*, 2022 IL App (2d) 220078; *Glass*, 2022 IL App (4th) 220270; *Snyder v. Chicago Transit Authority*, 22 CV 6086, 2023 WL 7298943 (N.D. Ill. Nov. 6, 2023); *Doe v. Northshore University Healthsystem*, 21-cv-05683, 2021 WL

8

5578790 (N.D. Ill. Nov. 30, 2021); *Troogstad v. City of Chicago*, 571 F. Supp. 3d 901 (N.D. Ill. 2021); *Panozzo v. Riverside Healthcare*, 21-CV-2292, 2022 WL 18779991 (C.D. Ill. Jan. 2, 2022). Plaintiffs, however, argue that those cases are inapplicable.

¶ 26 Of the cases litigated in state reviewing courts, *Lenz* is the most recent decision, and the circuit court here cited it as the basis for dismissing plaintiffs' case. In *Lenz*, the plaintiff claimed a violation of section 5 of the Act when she was denied a religious exemption, even after an appeal, and was ultimately terminated for not receiving a COVID-19 vaccination. *Lenz*, 2023 IL App (1st) 230740, ¶ 2. The plaintiff's claim was ruled barred by section 13.5, once an unrebutted affidavit was submitted establishing that the defendant's vaccination policy was intended to prevent the transmission of COVID. *Id.* ¶¶ 16-17. On appeal, the appellate court affirmed the dismissal of the plaintiff's action under section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2022)). *Lenz*, 2023 IL App (1st) 230740, ¶ 19.

¶ 27 Similarly, in *Krenowiek*, the appellate court held that section 13.5 "in effect removes employer requirements intended to prevent contraction or transmission of COVID-19 from the protection of the Act." *Krewionek*, 2022 IL App (2d) 220078, ¶ 38. Section 13.5 thus "defeats plaintiff['s] claim," even when she had pled sincerely held beliefs against receiving a COVID vaccination. *Id.* ¶¶ 4, 38.

¶ 28 Here, Plaintiffs ostensibly argues that *Lenz* and *Krenowiek* are inapplicable because those decisions, and the statutory amendment in section 13.5, fail to address the religious exemptions recognized by section 5 of the Act. We reject this argument and Plaintiffs' claim under the Act in Count I. Plaintiffs cannot rely on the religious or conscience-based protections of section 5 when section 13.5 demonstrates that the entire Act is effectively inapplicable when it comes to measures taken to prevent the transmission of COVID-19. Indeed, section 13.5 clearly and unambiguously

9

states that it "is not a violation of this Act for any person *** [or] entity *** to take any measures or impose any requirements *** intended to prevent contraction or transmission of COVID-19." 745 ILCS 70/13.5 (West 2022).

¶ 29 Unquestionably, Silver Cross's COVID-19 vaccination policy was implemented to prevent the spread of COVID-19; that conclusion is supported by an uncontested affidavit as well as common sense. Section 5 of the Act cannot give plaintiffs a cause of action that section 13.5 has expressly taken away. Statutes must be construed as a whole, meaning that different sections of the same statute should be considered in reference to one another so that they are given harmonious effect. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). Further, one section of a statute should not be interpreted in a way that renders another section of the same statute irrelevant. *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees of St. Claire County*, 218 Ill. 2d 175, 185-86 (2006). While plaintiffs may or may not have a potential legal basis to object to a COVID-19 vaccination, the Act is not a valid source for that objection.

¶ 30                                C. Retaliatory Discharge

¶ 31 Plaintiffs next assert that the circuit court erred in dismissing Count II of their complaint, which alleged retaliatory discharge. The tort of retaliatory discharge is an exception to the general rule that an at-will employee is terminable at any time for any or no cause. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128 (1981). To establish a claim for retaliatory discharge, a plaintiff must show (1) that they have been discharged, (2) in retaliation for her activities, and (3) that the discharge violates a clear mandate of public policy. *Bajalo v. Northwestern University*, 369 Ill. App. 3d 576, 580 (2006). The tort of retaliatory discharge is a

10

"limited and narrow cause of action," that is generally limited to "compelling circumstances." See *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505, 508 (1991).

¶ 32　　In evaluating retaliatory discharge claims, Illinois courts have refused to recognize a claim for any injury short of "actual discharge." *Bajalo*, 369 Ill. App. 3d at 582; see *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 163 (1992) (declining to extend cause of action to "constructive discharge"). Again, the parties in this case disagree as to whether plaintiffs were "actively discharged" or "constructively discharged." But we need not split those hairs because we find that plaintiffs did not, and cannot, adequately allege that their "discharge violates a clear mandate of public policy." See *Bajalo*, 369 Ill. App. 3d at 580.

¶ 33　　The "clear mandate of public policy" plaintiffs identify is the legislature's "findings and policy" statement in section 2 of the Act. In pertinent part, section 2 states:

"The General Assembly finds and declares that people and organizations hold different beliefs about whether certain health care services are morally acceptable. It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care whether acting individually, corporately, or in association with other persons; and to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in providing, paying for, or refusing to obtain, receive, accept, deliver, pay for, or arrange for the payment of health care services and medical care. It is also the public

11

policy of the State of Illinois to ensure that patients receive timely access to information and medically appropriate care." 745 ILCS 70/2 (West 2020).

¶ 34    We recognize a few problems with plaintiffs' argument. First, they continue to rely on section 5 of the Act (*id.* § 5), which has no application to a situation involving efforts to curb the spread of COVID-19, as we have previously explained. See 745 ILCS 70/13.5 (West 2022). Second, reading the Act in its entirety, as we are required to do, we conclude section 13.5 demonstrates an additional yet competing policy consideration that is more applicable than the one in section 5: the importance of preventing the spread of a virus that effectively brought the world to its knees.

¶ 35    Third, if anything, the relevant public policy considerations support Silver Cross's actions. Hospitals exist to protect health and to save lives. To do that effectively, it was not unreasonable to insist that hospital workers be vaccinated against COVID-19 at the very moment when the COVID-19 pandemic was disrupting nearly every facet of hospital operations. Hospitals routinely care for the most vulnerable patients: the elderly, the immunocompromised, and those with chronic illnesses. Unvaccinated healthcare workers increase the risk of spreading COVID-19 to those least able to fight it. Requiring vaccination is a basic measure to prevent avoidable harm and protect patients. In addition, Silver Cross doubtlessly imposed the policy, in part, to minimize COVID-related absences of unvaccinated staff members during a time when it was experiencing crippling staffing shortages.

¶ 36    This is a situation where an employer discharged employees in an effort to comply with a "clear mandate of public policy" (section 13.5 and efforts to mitigate a global pandemic) that conflicted with—and statutorily overrode—a competing "clear mandate of public policy" (section 2 and its goal of protective healthcare free choice). We conclude that, in a scenario like this, the

12

employer's actions cannot support a retaliatory discharge claim. We hold that plaintiffs have failed to adequately state a claim that their discharge violated a clear mandate of public policy. Accordingly, the circuit court correctly dismissed Count II with prejudice.

¶ 37                                         III. CONCLUSION

¶ 38        We conclude that Silver Cross's vaccination policy was intended to stop the spread of COVID-19, a goal protected by the plain language of section 13.5 of the Act. Accordingly, any conduct undertaken by Silver Cross that might have violated the Act in the absence of section 13.5 is not actionable under the Act. Thus, the dismissal of Count I, with prejudice, was proper on section 2-619(a)(9) grounds. We further hold that plaintiffs did not adequately allege that their discharge violated a "clear mandate of public policy" to maintain a claim for retaliatory discharge in the face of a motion to dismiss. Accordingly, the dismissal of Count II, with prejudice, was proper on section 2-615 grounds.

¶ 39        Affirmed.

13

*Kopp v. Silver Cross Hospital & Medical Center*, 2025 IL App (3d) 240414

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 2021-CH-400; the Hon. Roger D. Rickmon, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey Friedman and Arijana Keserovic, of Law Office of Jeffrey Friedman, P.C., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Erin Bolan Hines and Matthew DiCianni, of Cozen O'Connor, of Chicago, for appellee. |